IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMIAH B. | : |
| | : |
| v. | : |
| | : NO. 24-CV-4549 |
| MICHELLE KING, | : |
| Acting Commissioner of | : |
| Social Security | : |

**O P I N I O N**

SCOTT W. REID                                         DATE: February 11, 2025
UNITED STATES MAGISTRATE JUDGE

       Jeremiah B. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be remanded for the consideration of all evidence regarding fatigue, and its impact on the ability to perform work at the medium exertional level; and the effect of anxiety and fatigue upon the petitioner's ability to perform full-time work.

I.    *Factual and Procedural Background*

       Jeremiah B. was born on April 29, 1970. Record at 236. He completed eleventh grade. Record at 271. He has a history of work as a cook. Record at 272. At the time of his hearing, he was working part time as a school lunchroom cook. Record at 68. On December 9, 2021, Jeremiah B. completed an application for DIB, alleging disability since August 1, 2021, on the basis of his status post liver transplant, hypertension, anemia, atrial fibrillation, pre-diabetes, hyperlipidemia, GERD (gastroesophageal reflux), and depression. Record at 236, 270.

Jeremiah B.'s application for benefits was denied on April 27, 2022. Record at 88. It was denied again on August 16, 2022, upon reconsideration. Record at 111. Jeremiah B. then requested a hearing before an Administrative Law Judge ("ALJ"). Record at 136.

A hearing was held in this case on June 5, 2023. Record at 58. On August 3, 2023, however, the ALJ issued a written decision denying benefits. Record at 17. The Appeals Council denied Jeremiah B.'s request for review on July 3, 2024, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. Record at 1. Jeremiah B. then filed this action.

II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we

>also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

>(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.     *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Jeremiah B. suffered from the severe impairments of a history of liver transplant, paroxysmal atrial fibrillation, major depressive disorder, an anxiety disorder, and post-traumatic stress disorder ("PTSD").  Record at 20.  A number of other disorders were found to be non-severe, including ocular migraines, hypertension, GERD, and status-post removal of bile duct stones.  Record at 21.  The ALJ found that no impairment, and no combination of impairments met or equaled a listed impairment.  Record at 21-3.

The ALJ found that Jeremiah B. retained the RFC to perform work at the medium exertional level with the following limitations:

> He can have occasional concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, and poor ventilation. He can have no exposure to unprotected heights or moving mechanical parts. He can understand, remember, and carry out simple instructions; can frequently interact with the public, coworkers, and supervisors; and can tolerate occasional changes in a routine work setting.

Record at 23.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Jeremiah B. was not able to perform his past relevant work, but could work in such jobs as store laborer, bagger, and packer. Record at 28-9. She decided, therefore, that he was not disabled. Record at 29.

In his Request for Review, however, Jeremiah B. argues that the ALJ erred in failing to adequately address the effect of his fatigue on his ability to work. Jeremiah B. also argues that the evidence demonstrates that both his mental health – most notably, his anxiety – and his physical health preclude him from working more than part time. Finally, he maintains that the ALJ erred in failing to include in her RFC assessment a limitation to one and two-step tasks. This limitation would have restricted Jeremiah B. to jobs requiring level-one reasoning as defined in the Dictionary of Occupational Titles ("DOT"), he argues, yet the jobs identified by the vocational expert and by the ALJ require level-two reasoning.

IV.   *Discussion*

   A.   *Fatigue*

As Jeremiah B. points out, there is considerable evidence of fatigue in the medical record. Jeremiah B. testified that, when he finished a day at his part time job as a school lunch cook, he was "wrung out." Record at 74. He "[came] right home and lay in bed" for two hours. *Id*.

4

All medical professionals who opined on Jeremiah B.'s functional capacities mentioned fatigue. Jamie Via, Psy.D., the consulting mental health examiner, noted slouched posture and lethargic motor behavior on March 19, 2022. Record at 1152. Jeremiah B. told Dr. Via that he experienced insomnia. Record at 1150. He also told Patrick Frisella, D.O., the consulting physician who examined him on April 5, 2022, that he experienced fatigue as a result of his liver transplant. Record at 1164. Dr. Frisella limited Jeremiah B. to the weight requirements for light work. Record at 1169.

Jeremiah B.'s treating psychiatrist, Gerard Deeney, M.D., indicated that decreased energy and disturbed sleep were among the symptoms from which he suffered. Record at 1410. He also mentioned fatigue as a side effect of Jeremiah B.'s medications. Record at 1409. Jonathan Andrews, M.D., Jeremiah B.'s treating physician, indicated that he would have to lie down at unpredictable intervals 2-4 times "during an 8-hour working shift." Record at 1415.

Treatment notes also mentioned either complaints of fatigue, or observations of Jeremiah B.'s fatigued appearance. On December 22, 2021, Jeremiah B.'s mental health therapist reported that he "looked very tired, sad, and anxious." Record at 1371. On February 28, 2022, Jeremiah B. reported fatigue to his cardiologist. Record at 1238. On June 21, 2022, Jeremiah B. told his therapist that he was "struggling with sleep," and waking up hourly due to anxiety. Record at 1332. Similarly, on July 19, 2022, Jeremiah B. told his mental health therapist that he was tired because his anxiety had kept him up until the morning. Record at 1330. October 26, 2022, Jeremiah B. again told his cardiologist that he felt "generally tired." Record at 1241.

The ALJ mentioned Jeremiah B.'s fatigue in her decision, but the discussion was limited to one sentence: "There are some complaints of feeling tired, so the residual functional capacity is limited to medium range." Record at 24.

Medium work, however, not only requires lifting and carrying more weight than light work, but also "usually requires frequent bending-stooping." SSR 83-10. Thus, "in most medium jobs, being on one's feet for most of the workday is critical," so that the ability to lift or carry objects of 25 pounds frequently "is often more critical" than the ability to lift up to 50 pounds at a time. *Id*. Fatigue would seem to be at least as relevant to the ability to stand all day and lift objects frequently as it is to the amount of weight lifted, and possibly more relevant. Yet the ALJ did not mention these requirements of medium level work.

The frequent mentions of fatigue by multiple healthcare providers, and the fact that Jeremiah B. was diagnosed with so many disorders – both severe and non-severe – which could realistically be thought to cause fatigue, warrant more than the brief mention the ALJ has provided. For this reason, I will remand this matter for a more detailed discussion of the evidence of fatigue, and how it would impact all aspects of the ability to perform work at the medium exertional level, including the standing, bending, and lifting requirements. Both parties should be given the opportunity to brief this specific issue before the ALJ issues a new decision. *See Thomas v. Commissioner of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

  B.  *Evidence Regarding the Ability to Work Full-Time*

Jeremiah B. argues that, separate from the evidence of fatigue, the medical evidence in the file indicates that he could not work more than part-time. His treating physician, Dr. Andrews, indicated that he would be absent from full-time work more than four days per month. Record at 85. This would not be acceptable to an employer, according to the vocational expert. Record at 1416.

6

Dr. Deeney, Jeremiah B.'s treating psychiatrist, opined that he had "severe anxieties," adding that mindfulness and CBT (cognitive behavioral therapy) techniques made him able to "manage part time work."  Record at 1409.

The ALJ found Dr. Deeney's opinion not to be persuasive, writing that it was not supported by "the source's own findings on exams noting depressed and anxious mood at times, but cooperative, normal speech, normal mood, appropriate thoughts, and no suicidal ideation, homicidal ideation or delusions."  Record at 27.

The connection between Jeremiah B.'s employment and his anxiety is, however, amply documented in notes prepared by Harsha Rangari, M.S.W., Jeremiah B.'s therapist at the same mental health facility where he saw Dr. Deeney.

On November 15, 2022, Ms. Rangari quoted Jeremiah B. as saying:  "My workplace is good, but just my anxieties belong to the social interaction or their responses towards me (staff towards Client) are the main concern."  Record at 1286.  Similarly, on November 29, 2022, the therapist wrote:  "Client discussed his anxious feeling and his workplace throughout the session."  Record at 1281.  Jeremiah B. told Ms. Rangari:  "Work is not the problem, but people are."  *Id*.  On December 20, 2022, he "was facing work stress at his workplace" but stated:  "I am at workplace 4 hours a day, trying not to be too involve[d] in their conversation, just do my job and come back."  Record at 1279.  On January 12, 2023, Jeremiah B. said:  "I am only working for 4 hours, so trying to be calm with the situation and staff."  Record at 1277.  Ms. Rangari wrote: "Client's boss offered client other options to stay away from triggers, for example, Client has to switch to the different schools in the same school district so he does not need to hang out with the same staff every time."  *Id*.

7

The ALJ did not mention these therapy notes. She cited only one note from Ms. Rangari, dated May 26, 2023, for the positive finding that Jeremiah B. was enjoying interacting with the children at the elementary school to which he had been transferred. Record at 26, 1405. She also observed that the note said Jeremiah B. was still "struggling with daily anxieties", but she did not mention that the note stated elsewhere that he was "struggling with anxieties at workplace," specifically. Record at 26, 1405.

The foregoing casts doubt on the ALJ's refusal to credit Dr. Deeney's opinion because it was "not consistent with the other evidence of record." Record at 27. Upon remand, therefore, the ALJ should provide a fuller and more specific discussion of the evidence regarding Jeremiah B.'s ability to work a 40-hour week, discussing the evidence of both anxiety and fatigue.[1] Again, the parties should have the opportunity to brief these issues upon remand. *Thomas*, *supra*.

C.  *One and Two-Step Tasks*

Regarding Jeremiah B.'s mental limitations, the ALJ found persuasive the opinion of Stacie Barnes. Psy.D., the non-examining agency mental health expert who reviewed his medical records. Record at 26. Dr. Barnes wrote that Jeremiah B. could "understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)." Record at 97. The ALJ similarly found persuasive the opinion of Valorie Lynn Rings, Psy.D., the agency expert who examined

---

[1] In her response, the Commissioner cites language from 20 C.F.R. §404.1571 which states "even if the work you have done was not substantial gainful activity, it may show you are able to do more work than you actually did." Record at 27. She suggests that "Plaintiff's ability to perform mentally demanding, semiskilled work activity on a parttime basis" was a factor in the ALJ discounting Dr. Deeney's opinion. However, the ALJ neither cited 20 C.F.R. §404.1571 nor relied upon Jeremiah B.'s part-time work to find that he was capable of full-time work. On the contrary, she found that Jeremiah B. was no longer able to work as a cook. Record at 28. Section 404.1571 is therefore irrelevant here. The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based. *Faragnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001). In any event, whether part-time work shows that a claimant can "do more work than they actually did" must be considered on a case-by-case basis. Otherwise, there is a risk of punishing claimants who choose not to malinger.

Jeremiah B.'s records on reconsideration. Record at 26. Dr. Rings, in the same language as Dr. Barnes, wrote that Jeremiah B. could "understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)." Record at 108.

Jeremiah B. points out that the ALJ found in her RFC assessment that he could "understand, remember, and carry out simple instructions," but did not limit him to one and two-step tasks. He argues that it was error not to include this limitation, since it was imposed by doctors whose opinions the ALJ found "persuasive." According to Jeremiah B., the limitation to one and two-step tasks would restrict him to jobs requiring no more than level one reasoning as it is defined in the DOT, whereas the jobs which the ALJ found him capable of performing all required level two reasoning.

The merits of this issue are not entirely clear. As Jeremiah B. points out, there is caselaw at the District Court level calling a limitation to one and two-step tasks more restrictive than "simple tasks." *Edwards v. Kijakazi*, Civ. A. No. 2101429, 2023 WL 6387370 at \*\*5-6 (E.D. Pa. Sep. 29, 2023); *Stine v. Kijakazi*, Civ. A. No. 21-5492, 2023 WL 3483885 at \*9 (E.D. Pa. May 15, 2023); *Maher v. Saul*, Civ. A. No. 19-5721, 2020 WL 5876808 at \*5 (E.D. Pa. Sep. 9, 2020), *approved and adopted*, 2020WL 5849466 (E.D. Pa. Oct. 1, 2020). Simple instructions have also been equated with simple tasks. *Stine*, *supra*. Certainly, Drs. Barnes and Rings' use of "i.e." shows that they considered "simple instructions" to compel "one and two-step tasks."

Yet, the ALJ did not even mention the limitation to simple instructions in her evaluation of the opinions provided by Drs. Barnes and Rings. She only cited their findings on the B criteria of the mental listings: "mild limitation in ability to understand, remember and apply information and moderate limitation in ability to interact with others, concentrate, persist or

9

maintain pace, and adapt of manage oneself." Record at 26. It was these findings she called "persuasive."

Dr. Via, who the ALJ also found "persuasive," indicated that Jeremiah B. was moderately limited in the ability to carry out complex instructions, without mentioning the number of steps in tasks he could complete. Record at 1155. Since the ALJ cited Dr. Via's finding, it was most likely the basis for her limitation of Jeremiah B. to simple tasks. Record at 26.

Thus, this is not a case where the difference between simple tasks and one and two-step tasks must be parsed. However, since I will order remand of the case on other grounds, the ALJ may choose to address this matter in her new decision.

V.    *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be granted in part and the matter remanded to the Agency for the consideration of all evidence regarding fatigue, and its impact on the ability to perform work at the medium exertional level; and the effect of anxiety and fatigue upon the petitioner's ability to perform full-time work, with the parties permitted to brief these issues before the ALJ issues a decision.

BY THE COURT:

/s/ Scott W. Reid
_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE